BUTLER (HERBERT v.). See Case No. 6,-397.

## Case No. 2,241.

### BUTLER v. HOPPER.

[1 Wash. C. C. 499.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1806.

BRINGING SLAVE INTO FREE STATE—DOMICILE OF MASTER—PRIVILEGE OF MEMBER OF CONGRESS—CONSTITUTIONAL LAW—SPECIAL VERDICT—PROVINCE OF COURT.

1. The plaintiff formerly lived in South Carolina, where he had a plantation which he cultivated, and still continues to do so, by his manager and slaves, and upon which he has a furnished house, and servants. From 1794 to this time, with the exception of an annual visit to his estate in Carolina, he has kept a dwelling house in the city of Philadelphia, and has resided in it with his family and servants, and amongst them Ben; who was his slave before he came to Philadelphia, and who continued with him, claimed as such, until September 1805, when claiming his freedom, he was discharged from his service, by habeas corpus issued by the court of common pleas of Philadelphia county. Whilst on his estate in South Carolina, Mr. B. always kept house, having Ben with him. From 1794 to 1805, Mr. B. represented the state of South Carolina in congress, with the exception of two years, during which, he was a member of the legislature of that state. The act of assembly of March 1, 1780, is not contrary to the 1st article of the constitution of the United States; as the 9th section of the 1st article thereof, does not apply to state governments; nor does the 2d section of the 4th article extend to the case of a slave, voluntarily carried by his master into another state, and there leaving him under the protection of some law

declaring him free; but to slaves escaping from one state into another.

[Cited in Polydore v. Prince, Case No. 11,-257; Passenger Cases, 7 How. (48 U. S.) 542, 544; Morgan's Louisiana & T. R. & S. S. Co. v. Louisiana Board of Health, 118 U. S. 467, 6 Sup. Ct. 1120.]

2. The plaintiff cannot claim an exemption from the operation of the act of assembly of Pennsylvania; because, for two years he ceased to be a member of congress, and during that time, he lost the privilege which the exception gave him. He cannot be considered a sojourner in the state. If a man remove from one state to another, with an intention of making the latter the place of his permanent abode, he is domiciled there; although he leave behind him another estate which he cultivates, and is even elected a member of the legislature of the state, where the same is situated.

[See note to Case No. 2,176.]

3. If the jury, in a special verdict, find facts only, the court must draw the legal conclusion from them; and if they draw conclusions against the law upon the face of them, the court will reject the conclusion, and judge upon the facts.

[Cited in U. S. v. Page, Case No. 15,986a.]

[See Peterson v. U. S., Case No. 11,036; King v. Delaware Ins. Co., Id. 7,788. Compare U. S. v. Collier, Id. 14,833.]

4. Where the jury find only such facts as leave the question of law equivocal, and then draw a conclusion which the facts not found might have warranted; the court will say their conclusion is against law.

This case comes before the court on a special verdict, the material parts of which find; that the plaintiff [Pierce Butler] formerly lived in the state of South Carolina, where, as well as in Georgia, he had a valuable plantation, which he cultivated, and still cultivates, by his overseers and slaves, and on which he had, and still has, a furnished house and servants. That from the year 1794 to the present time, with the exception of an annual visit to his plantations at the southward, continuing from October in each year, till May or June following; he has kept a dwelling house in the city of Philadelphia, and has resided in it, with his family, consisting of several children, and domestic servants, and amongst the latter, Ben, the subject of the present suit; who was his property, as a slave at the time of his coming into this city, and who continued with him, claimed as such, until September, 1805, when he was discharged from his service, under a habeas corpus issued from the court of common pleas of this state. Whilst on his plantation in South Carolina, during these annual visits, the plaintiff kept house, always having Ben with him. From the year 1794, until the 4th of January 1805, the plaintiff represented the state of South Carolina in congress, except for two years, between 1796 and 1800, when he was a member of the legislature of that state.

Mr. Ingersoll, for plaintiff.
Mr. Lewis, for defendant.

WASHINGTON, Circuit Justice (after stating the case as above). Upon these facts,

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the question is, whether Ben became free by virtue of a law of this state, passed on the 1st of March 1780; which declares, that no person of any nation or colour, except negroes registered according to the act, shall thereafter be holden as slaves within this state, but as free, except the domestic slaves attending upon delegates in congress from the other states, foreign ministers, and consuls, and persons passing through, or sojourning in this state, and not becoming resident therein. To dispose at once of an objection to the validity of this law, which was slightly glanced at, I observe, that the 9th section of the 1st article of the constitution of the United States, which restrains congress from prohibiting the importation of slaves prior to the year 1808, does not, in its words or meaning, apply to the state governments. Neither does the 2d section of the 4th article; which declares, that "no person, held to labour or service in one state, under the laws thereof, escaping into another shall, in consequence of any law therein, be discharged from such service;" extend to the case of a slave voluntarily carried by his master into another state, and there leaving him under the protection of some law declaring him free. The exercise of this right, of restraining the importation of slaves from the other states, under different limitations, is not peculiar to Pennsylvania. Laws of this nature, but less rigid, exist in most of the states where slavery is tolerated.

We come then to the consideration of this law, and of the facts found in the special verdict. The plaintiff claims an exemption from the enacting part of the section above stated, upon two grounds: 1st, as a member of congress; and secondly,. as a sojourner. The first will not answer his purpose, because for two years he ceased to be a member of congress, and therefore lost the privilege which that character might otherwise have conferred upon him, under the exception in the law. This fact dispenses with the necessity of examining the wiredrawn distinction, which has been contended for, between "a representative in congress," and "a member of congress;" both of which expressions describe the same character, and are varied in different parts of the section, with a view to the sense of the phrase, as well as to the grammatical accuracy.

The next question then is, can the plaintiff be considered as within the other exception of the law, a sojourner during the period when he ceased to be a member of congress? But the verdict precludes all inquiry into this point, by finding. that the plaintiff, from the year 1794, to the present time, has resided with his family in Philadelphia, except at those times when he visited his plantations in the southern states. No person is entitled to the protection of the exception, who is a resident in the state, unless he be a member of congress, a minister. or consul. But the jury find that the plaintiff was a resident, and was not either a member of congress, a minister, or consul. The conclusion is inevitable. In answer to this, it is said by the counsel for the plaintiff, that the jury have found facts enough to show that the plaintiff was not a resident of this state. What these facts are has already been stated. But, will it be contended, that if a man removes from one state to another, with an intention of making the latter his permanent abode, he is not domiciliated there; because he has left behind him an estate which he cultivates, sometimes visits, (no matter how often, or how long in each year,) and whilst there, keeps house, and is even elected into the legislature of the state he has left? These circumstances are of prodigious weight, I admit, to repel the idea of a change of domicile; but strong as they are, evidence might have been given to the jury, sufficient to warrant them in the conclusion they have drawn; and by finding the plaintiff to be a resident in this state, they find, in effect, everything necessary to constitute him a resident. If the jury find facts only, the court must draw the legal conclusion from them; or if, having found the facts, they draw a conclusion against the law, upon the face of them, the court will judge upon the facts, and reject the conclusion. But, when they find only such facts as leave the question of law equivocal, and then draw a conclusion which the facts not found might have warranted, the court cannot say that their conclusion is against law. I am therefore of opinion, that, upon this verdict, the law is with the defendant.